FILED

2011 NOV -9 PM 4: 23

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 11-   CR 11 01075 |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 1028(f): Conspiracy to Possess at Least Five Identification Documents and Authentication Features With Intent to Use Unlawfully; 18 U.S.C. § 1028(a)(3): Possession of at Least Five Identification Documents and Authentication Features With Intent to Use Unlawfully; 18 U.S.C. § 1028A: Aggravated Identity Theft; 18 U.S.C. § 371: Conspiracy to Engage in the Misbranding of Prescription Drugs; 18 U.S.C. § 1956(h): Conspiracy to Engage in Transactions in Criminally Derived Proceeds; 18 U.S.C. § 1956: Money Laundering; 18 U.S.C. § 1957: Engaging in Transactions in Criminally Derived Proceeds; 31 U.S.C. § 5324(a)(3): Structuring; 18 U.S.C. § 1001(a)(2): False Statement to a Federal Officer; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to Be Done] |
| ARMAN GRIGORYAN, LIANNA OVSEPIAN, aka "Lili," KENNETH WAYNE JOHNSON, NURISTA GRIGORYAN, aka "Nora," PHIC LIM, aka "PK," ARTAK OVSEPIAN, EDGAR HOVANNISYAN, ARTUR HARUTYUNYAN, SAMVEL TAMAZYAN, MIKAYEL GHUKASYAN, ARTYOM YEGHIAZARYAN, THEANA KHOU, NUNE OVSEPIAN, LISA DANIELLE MENDEZ, aka "Danielle," ANTHONY GLEN JONES, DAVID SMITH, aka "Green Eyes," VINCENT VO, aka "Minh," and RICHARD BOND WASHINGTON, | |
| Defendants. | |

The Grand Jury charges:

<u>GENERAL ALLEGATIONS</u>

At all times relevant to this Indictment:

<u>The Defendants and Manor Medical</u>

1.    Defendants ARMAN GRIGORYAN, LIANNA OVSEPIAN, also known as ("aka") "Lili," NURISTA GRIGORYAN, aka "Nora," and ARTAK OVSEPIAN operated a business known as Manor Medical Imaging, Inc. ("Manor"), located in Glendale, California, within the Central District of California.

2.    Manor functioned as a "prescription mill" that generated thousands of prescriptions for expensive anti-psychotic medications ("Psych Meds"), namely, Abilify, Seroquel, and Zyprexa, which Manor's "patients" did not in fact need.  Those prescriptions (the "Manor Prescriptions") were made to appear to be signed and issued by defendant KENNETH WAYNE JOHNSON ("JOHNSON"), a medical doctor, when in fact defendant JOHNSON did not issue or lawfully authorize the Manor Prescriptions, nor did defendant JOHNSON examine Manor's "patients."  Instead, defendant JOHNSON allowed other Manor employees, primarily defendant NURISTA GRIGORYAN, to falsely pose as physicians and physician's assistants and to issue the Manor Prescriptions using defendant JOHNSON's name and Medi-Cal and Medicare billing information.

3.    Patient recruiters, or "Cappers," would bring beneficiaries of Medicare and/or Medi-Cal ("the beneficiaries") to Manor.  Cappers who recruited beneficiaries on behalf of Manor included defendants LISA DANIELLE MENDEZ, aka "Danielle" ("MENDEZ"), ANTHONY GLEN JONES ("JONES"), DAVID SMITH, aka "Green

2

1   Eyes" ("SMITH"), VINCENT VO, aka "Minh" ("VO"), and RICHARD BOND

2   WASHINGTON ("WASHINGTON").

3       4.   Upon arriving at Manor, each of the beneficiaries, in

4   exchange for cash or other inducements, would receive Manor

5   Prescriptions for one Psych Med and at least one other drug.

6   After the Manor Prescriptions were provided to the beneficiaries,

7   "Drivers" employed by Manor would take the recruited

8   beneficiaries to pharmacies, where, under the supervision of the

9   Drivers, the beneficiaries filled their Manor Prescriptions.  The

10  Drivers used by Manor included defendants ARTAK OVSEPIAN, who

11  served as manager of Manor's Drivers, ARMAN GRIGORYAN, EDGAR

12  HOVANNISYAN ("HOVANNISYAN"), ARTUR HARUTYUNYAN ("HARUTYUNYAN"),

13  MIKAYEL GHUKASYAN ("GHUKASYAN"), ARTYOM YEGHIAZARYAN

14  ("YEGHIAZARYAN"), and SAMVEL TAMAZYAN ("TAMAZYAN"), who was aided

15  and abetted by defendant NUNE OVSEPIAN.

16      5.   After the Manor Prescriptions were filled, the Drivers

17  would take the Psych Meds from the beneficiaries and deliver

18  those medications to Manor.

19      6.   Manor also generated Psych Med prescriptions, which

20  also were falsely made to appear to be written by defendant

21  JOHNSON, in the names of beneficiaries who never visited Manor

22  and whose identities were stolen.  In these instances, using

23  falsified patient authorization forms, Manor employees would

24  either fax prescriptions to pharmacies or have the Drivers bring

25  prescriptions to pharmacies.  The Drivers would then fill the

26  prescriptions, which included Psych Meds, and the Drivers would

27  then deliver the Psych Meds to Manor.

28  ///

7. The following pharmacies, among others, filled Manor Prescriptions: Huntington Pharmacy ("Huntington"), owned by defendants PHIC LIM, aka "PK" ("LIM") and THEANA KHOU ("KHOU"); Pacific Grand Pharmacy ("Pacific Grand"); Adams Square Pharmacy ("Adams Square"); West Vern Pharmacy ("West Vern"); Garos Pharmacy ("Garos"); Midway Drugs Pharmacy ("Midway Drugs"); and Merced Medical Pharmacy ("Merced Medical") (collectively, "the Pharmacies").

8. As the defendants knew, the Pharmacies would bill Medicare (via the beneficiaries' prescription drug plans ("PDPs")) or Medi-Cal for each of the Manor Prescriptions. Between in or about September 2009 and in or about October 2011, the Pharmacies submitted no less than approximately $18,045,398 in claims to Medicare or Medi-Cal for at least 21,075 Manor Prescriptions. Medicare and Medi-Cal actually paid the Pharmacies a combined amount of approximately $7,291,419 for 14,705 of those claims, with Huntington alone receiving approximately $2,220,016 of those payments.

9. Defendants LIM and KHOU maintained control over the following financial accounts, into which they deposited and through which they laundered proceeds derived from their involvement in filling Manor Prescriptions: an East West bank account ending in the numbers 7236 ("the East West Account"); Chase Bank accounts ending in the numbers 0725 ("Chase Account 1") and 8303 ("Chase Account 2"); a HSBC account ending in the numbers 0993 ("HSBC Account 1"), each held in the name "P.S. Enterprise Inc. d/b/a Huntington Pharmacy"; a Chase Bank Account ending in numbers 2674 ("Chase Account 3"); and a TD Ameritrade

1    account ending in the numbers 9811 (the "TD Ameritrade Account"),

2    each held in the name "Phic K Lim & Theana S Khou Family Trust."

3    <u>The Medicare Program</u>

4        10.   Medicare was a federal health care benefit program,

5    affecting commerce, that provided benefits to persons who were

6    over the age of 65 or disabled.   Medicare was administered by the

7    Centers for Medicare and Medicaid Services ("CMS"), a federal

8    agency under the United States Department of Health and Human

9    Services ("HHS").

10   <u>Medicare Part B</u>

11       11.   Medicare Part B covered, among other things, medically

12   necessary physician services and medically necessary outpatient

13   tests ordered by a physician.

14       12.   Health care providers, including physicians and

15   clinics, could receive direct reimbursement from Medicare by

16   applying to Medicare and receiving a Medicare provider number.

17   To obtain payment for Part B services, an enrolled physician or

18   clinic, using its Medicare provider number, would submit claims

19   to Medicare, certifying that the information on the claim form

20   was truthful and accurate and that the services provided were

21   reasonable and necessary to the health of the Medicare

22   beneficiary.

23   <u>Medicare Part D</u>

24       13.   Medicare Part D provided coverage for outpatient

25   prescription drugs through qualified private insurance plans

26   that receive reimbursement from Medicare.   Beneficiaries enrolled

27   under Medicare Part B could obtain Part D benefits by enrolling

28   with any one of many qualified PDPs.

14.   To obtain payment for prescription drugs provided to such Medicare beneficiaries, pharmacies would submit their claims for payment to the beneficiary's PDP.   The beneficiary would be responsible for any deductible or co-payment required under his or her PDP.

15.   Medicare PDPs commonly provided plan participants with identification cards for use in obtaining prescription drugs.

The Medi-Cal Program

16.   Medi-Cal was a health care benefit program, affecting commerce, that provided reimbursement for medically necessary health care services to indigent persons in California.   Funding for Medi-Cal was shared between the federal government and the State of California.

17.   The California Department of Health Care Services ("DHCS") administered the Medi-Cal program.   DHCS authorized provider participation, determined beneficiary eligibility, issued Medi-Cal cards to beneficiaries, and promulgated regulations for the administration of the program.

18.   Medi-Cal reimbursed physicians and other health care providers for medically necessary treatment and services rendered to Medi-Cal beneficiaries.

19.   Health care providers, including doctors and pharmacies, could receive direct reimbursement from Medi-Cal by applying to Medi-Cal and receiving a Medi-Cal provider number.

20.   To obtain payment for services, an enrolled provider, using its unique provider number, would submit claims to Medi-Cal certifying that the information on the claim form was truthful

///

1  and accurate and that the services provided were reasonable and

2  necessary to the health of the Medi-Cal beneficiary.

COUNT ONE

[18 U.S.C. § 1349]

21. The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 20 of this Indictment as if set forth herein.

A. **OBJECT OF THE CONSPIRACY**

22. Beginning on a date unknown, and continuing through on or about October 27, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARMAN GRIGORYAN, LIANNA OVSEPIAN, JOHNSON, NURISTA GRIGORYAN, LIM, ARTAK OVSEPIAN, HOVANNISYAN, HARUTYUNYAN, TAMAZYAN, GHUKASYAN, YEGHIAZARYAN, KHOU, NUNE OVSEPYAN, MENDEZ, JONES, SMITH, VO, and WASHINGTON, together with others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit health care fraud, in violation of Title 18, United States Code, Section 1347.

B. **MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED**

23-30. The means by which the object of the conspiracy was to be accomplished included the following: the Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 8 of this Indictment as if fully set forth herein.

C. **OVERT ACTS**

31. In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants ARMAN GRIGORYAN, LIANNA OVSEPIAN, JOHNSON, NURISTA GRIGORYAN, LIM, ARTAK OVSEPIAN, HOVANNISYAN, HARUTYUNYAN, TAMAZYAN, GHUKASYAN, YEGHIAZARYAN, KHOU, NUNE OVSEPYAN, MENDEZ, JONES, SMITH, VO, and

1   WASHINGTON, together with unnamed co-conspirators and others

2   known and unknown to the Grand Jury, committed and willfully

3   caused others to commit the following overt acts, among others,

4   within the Central District of California, and elsewhere:

5       DEFENDANT ARMAN GRIGORYAN

6       Overt Act No. 1:  On August 12, 2010, defendant ARMAN

7   GRIGORYAN collected a bag of pharmaceuticals, including Psych

8   Meds, from defendant HARUTYUNYAN.

9       Overt Act No. 2:  On April 15, 2010, defendant ARMAN

10  GRIGORYAN recruited beneficiaries to fill Manor Prescriptions and

11  drove recruited beneficiaries to Huntington to fill Manor

12  Prescriptions.

13      Overt Act No. 3:  On May 29, 2010, defendant ARMAN

14  GRIGORYAN drove recruited beneficiaries to Huntington to fill

15  Manor Prescriptions.

16      DEFENDANT LIANNA OVSEPIAN

17      Overt Act No. 4:  On September 29, 2010, defendant

18  LIANNA OVSEPIAN contacted and spoke with an auditor employed by

19  Medicare PDP Prescription Solutions Inc. ("PSI") regarding an

20  audit conducted by PSI of Manor Prescriptions filled by

21  Huntington.

22      Overt Act No. 5:  On January 24, 2011, defendant LIANNA

23  OVSEPIAN contacted R.T., the owner of Sunny Bay Pharmacy, to

24  recruit R.T.'s assistance in filling Manor Prescriptions.

25      Overt Act No. 6:  On February 8, 2011, defendant LIANNA

26  OVSEPIAN met with an undercover agent posing as an employee of

27  Sunny Bay Pharmacy to discuss recruiting Sunny Bay Pharmacy to

28  fill Manor Prescriptions.

1      Overt Act No. 7:  On May 19, 2011, defendant LIANNA

2  OVSEPIAN held a meeting with defendants GHUKASYAN, HARUTYUNYAN,

3  and ARTAK OVSEPIAN at Manor.

4      Overt Act No. 8:  On September 13, 2011, at Manor,

5  defendant LIANNA OVSEPIAN assisted defendants HARUTYUNYAN and

6  HOVANNISYAN in burning pharmacy bags and other materials.

7  DEFENDANT JOHNSON

8      Overt Act No. 9:  On November 3, 2010, defendant

9  JOHNSON contacted and spoke with a PSI auditor regarding an audit

10 of Manor Prescriptions filled by Huntington.

11     Overt Act No. 10:  On February 8, 2011, defendant

12 JOHNSON met with an undercover agent posing as an employee of

13 Sunny Bay Pharmacy to discuss recruiting Sunny Bay Pharmacy to

14 fill Manor Prescriptions.

15 DEFENDANT NURISTA GRIGORYAN

16     Overt Act No. 11:  On October 25, 2011, defendant

17 NURISTA GRIGORYAN completed patient medical records while seated

18 in her car parked at Manor.

19 DEFENDANTS LIM and KHOU

20     Overt Act No. 12:  On August 6, 2010, defendant KHOU

21 transferred $165,000 in funds received by Huntington from

22 Medi-Cal for billings of Manor Prescriptions to the TD Ameritrade

23 Account.

24     Overt Act No. 13:  On September 6, 2010, defendant LIM

25 transferred $67,000 in funds received by Huntington from Medi-Cal

26 for billings of Manor Prescriptions to the TD Ameritrade Account.

27     Overt Act No. 14:  In October 2010, defendant LIM

28 provided a PSI auditor with statements purportedly signed by 16

1   beneficiaries, which falsely asserted that the beneficiaries

2   retracted prior complaints to PSI that Manor Prescriptions were

3   being fraudulently filled using their Medicare benefits without

4   their knowledge or authorization.

5        Overt Act No. 15:  On September 21, 2010, defendant LIM

6   spoke with an auditor from the California Department of Health

7   Care Services ("DHCS") regarding an audit conducted by DHCS of

8   Manor Prescriptions filled by Huntington.

9   DEFENDANT ARTAK OVSEPIAN

10       Overt Act No. 16:  On September 20, 2010, defendant

11  ARTAK OVSEPIAN drove recruited beneficiaries to Pacific Grand to

12  fill Manor Prescriptions.

13       Overt Act No. 17:  On September 21, 2010, defendant

14  ARTAK OVSEPIAN drove recruited beneficiaries to Pacific Grand to

15  fill Manor Prescriptions.

16       Overt Act No. 18:  On January 24, 2011, defendant ARTAK

17  OVSEPIAN traveled with defendant LIANNA OVSEPIAN to Sunny Bay

18  Pharmacy to contact R.T. and recruit R.T.'s assistance in filling

19  Manor Prescriptions.

20       Overt Act No. 19:  On January 25, 2011, defendant ARTAK

21  OVSEPIAN drove a recruited beneficiary to Sunny Bay Pharmacy to

22  fill Manor Prescriptions.

23       Overt Act No. 20:  On January 26, 2011, defendant ARTAK

24  OVSEPIAN drove recruited beneficiaries to Sunny Bay Pharmacy to

25  fill Manor Prescriptions.

26       Overt Act No. 21:  On May 19, 2011, defendant ARTAK

27  OVSEPIAN drove recruited beneficiaries to Midway Drugs to fill

28  Manor Prescriptions.

1    Overt Act No. 22:  On May 25, 2011, defendant ARTAK

2 OVSEPIAN drove recruited beneficiaries to Midway Drugs to fill

3 Manor Prescriptions.

4    Overt Act No. 23:  On June 14, 2011, defendant ARTAK

5 OVSEPIAN drove recruited beneficiaries to a pharmacy to fill

6 Manor Prescriptions.

7    Overt Act No. 24:  On July 19, 2011, defendant ARTAK

8 OVSEPIAN assisted in loading recruited beneficiaries into vans at

9 Manor.

10    Overt Act No. 25:  On July 20, 2011, defendant ARTAK

11 OVSEPIAN drove recruited beneficiaries to Merced Medical to fill

12 Manor Prescriptions.

13    Overt Act No. 26:  On September 21, 2011, defendant

14 ARTAK OVSEPIAN assisted in loading recruited beneficiaries into

15 vans at Manor.

16    DEFENDANTS HOVANNISYAN, HARUTYUNYAN, and GHUKASYAN

17    Overt Act No. 27:  On August 12, 2010, defendants

18 HARUTYUNYAN drove recruited beneficiaries to Huntington to fill

19 Manor Prescriptions.

20    Overt Act No. 28:  On January 11, 2011, defendant

21 HOVANNISYAN drove recruited beneficiaries to Midway Drugs to fill

22 Manor Prescriptions.

23    Overt Act No. 29:  On May 19, 2011, defendants

24 HARUTYUNYAN and GHUKASYAN followed an investigating agent who had

25 been conducting surveillance of Manor.

26    Overt Act No. 30:  On May 19, 2011, defendants

27 HOVANNISYAN and GHUKASYAN inspected cars parked near Manor to

28 detect the presence of law enforcement surveillance of Manor.

1       Overt Act No. 31:  On May 19, 2011, defendants

2   HOVANNISYAN and GHUKASYAN loaded beneficiaries into vans and

3   drove the recruited beneficiaries to Midway Drugs to fill Manor

4   Prescriptions.

5       Overt Act No. 32:  On July 20, 2011, defendants

6   HOVANNISYAN and HARUTYUNYAN drove recruited beneficiaries to

7   Merced Medical to fill Manor Prescriptions.

8       DEFENDANTS TAMAZYAN and NUNE OVSEPIAN

9       Overt Act No. 33:  On February 11, 2011, defendants

10  TAMAZYAN and NUNE OVSEPIAN possessed approximately 300 documents

11  bearing xerox copies of beneficiaries' identification and

12  government health insurance cards.

13      DEFENDANT YEGHIAZARYAN

14      Overt Act No. 34:  On September 20, 2011, defendant

15  YEGHIAZARYAN drove recruited beneficiaries to Merced Medical to

16  fill Manor Prescriptions.

17      Overt Act No. 35:  On September 21, 2011, defendant

18  YEGHIAZARYAN drove recruited beneficiaries to a pharmacy to fill

19  Manor Prescriptions.

20      DEFENDANTS MENDEZ and JONES

21      Overt Act No. 36:  On September 20, 2010, defendant

22  MENDEZ assisted in driving recruited beneficiaries to Pacific

23  Grand to fill Manor Prescriptions.

24      Overt Act No. 37:  On May 19, 2011, defendant MENDEZ

25  took recruited beneficiaries to Manor.

26      Overt Act No. 38:  On July 19, 2011, defendants MENDEZ

27  and JONES brought recruited beneficiaries to Manor.

28  ///

<u>Overt Act No. 39</u>:  On July 20, 2011, defendants MENDEZ and JONES met with recruited beneficiaries at Manor.

<u>Overt Act No. 40</u>:  On September 20, 2011, defendants MENDEZ and JONES met with recruited beneficiaries at Manor.

<u>Overt Act No. 41</u>:  On September 21, 2011, defendants MENDEZ and JONES met with recruited beneficiaries at Manor.

<u>DEFENDANT SMITH</u>

<u>Overt Act No. 42</u>:  On May 19, 2011, defendant SMITH met with beneficiaries at Manor.

<u>DEFENDANT VO</u>

<u>Overt Act No. 43</u>:  In March 2010, defendant VO took recruited beneficiaries to Manor.

<u>DEFENDANT WASHINGTON</u>

<u>Overt Act No. 44</u>:  On May 29, 2010, defendant WASHINGTON recruited beneficiaries to fill Manor Prescriptions.

COUNT TWO

[18 U.S.C. § 1028(f)]

A.   OBJECT OF THE CONSPIRACY

32.   Beginning on a date unknown, and continuing through on or about October 27, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARMAN GRIGORYAN, LIANNA OVSEPIAN, also known as ("aka") "Lili," KENNETH WAYNE JOHNSON ("JOHNSON"), NURISTA GRIGORYAN, aka "Nora," PHIC LIM, aka "PK" ("LIM"), ARTAK OVSEPIAN, EDGAR HOVANNISYAN ("HOVANNISYAN"), ARTUR HARUTYUNYAN ("HARUTYUNYAN"), SAMVEL TAMAZYAN ("TAMAZYAN"), MIKAYEL GHUKASYAN ("GHUKASYAN"), ARTYOM YEGHIAZARYAN ("YEGHIAZARYAN"), THEANA KHOU ("KHOU"), NUNE OVSEPYAN, LISA DANIELLE MENDEZ, aka "Danielle" ("MENDEZ"), ANTHONY GLEN JONES ("JONES"), DAVID SMITH, aka "Green Eyes" ("SMITH"), VINCENT VO, aka "Minh" ("VO"), and RICHARD BOND WASHINGTON ("WASHINGTON"), together with others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally possess with intent to use unlawfully and transfer unlawfully at least five identification documents and authentication features, in violation of Title 18, United States Code, Sections 1028(a)(3), (b)(1)(A)(i).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

33.   The means by which the object of the conspiracy was to be accomplished included the following:

34-41.   The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 8 of this Indictment as if fully set forth herein.

C. <u>OVERT ACTS</u>

42.   In furtherance of the conspiracy and to accomplish its object, on or about following dates, defendants ARMAN GRIGORYAN, LIANNA OVSEPIAN, JOHNSON, NURISTA GRIGORYAN, LIM, ARTAK OVSEPIAN, HOVANNISYAN, HARUTYUNYAN, TAMAZYAN, GHUKASYAN, YEGHIAZARYAN, KHOU, NUNE OVSEPYAN, MENDEZ, JONES, SMITH, VO, and WASHINGTON, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, within the Central District of California and elsewhere.

43.   The Grand Jury hereby repeats, re-alleges, and incorporates by reference Overt Acts 1 through 44 of Count One of this Indictment as if fully set forth herein.

COUNT THREE

[18 U.S.C. §§ 1028(a)(3), (b)(1)(A)(i), 2(a)]

44.   On or about February 16, 2011, in Los Angeles County, within the Central District of California, defendants SAMVEL TAMAZYAN ("TAMAZYAN") and NUNE OVSEPIAN ("OVSEPIAN"), each aiding and abetting the other, knowingly possessed with intent to use unlawfully and transfer unlawfully at least five identification documents not issued lawfully for the use of either defendant TAMAZYAN or OVSEPIAN, authentication features, and false identification documents, namely, health insurance identification cards and health insurance account numbers, including identification documents, authentication features, and false identification documents which were issued and which appeared to have been issued by and under the authority of the United States.

COUNT FOUR

[18 U.S.C. §§ 1028A, 2(a)]

45.   On or about February 16, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants SAMVEL TAMAZYAN and NUNE OVSEPIAN, each aiding and abetting the other, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the names and unique government-issued public health care identification numbers of N.P., J.M., and A.T., during and in relation to a felony violation of Title 18, United States Code, Section 1028(a)(3) (Possession of At Least Five Identification Documents and Authentication Features With Intent to Use Unlawfully) as charged in Count Three of this Indictment.

COUNT FIVE

[18 U.S.C. §§ 1028A, 2]

46.  The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 8 of this Indictment as if set forth herein.

47.  Beginning on a date unknown, and continuing through on or about October 27, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARMAN GRIGORYAN, LIANNA OVSEPIAN, JOHNSON, NURISTA GRIGORYAN, LIM, ARTAK OVSEPIAN, HOVANNISYAN, HARUTYUNYAN, TAMAZYAN, GHUKASYAN, YEGHIAZARYAN, KHOU, NUNE OVSEPYAN, MENDEZ, JONES, SMITH, VO, and WASHINGTON, each aiding and abetting the others, knowingly transferred, possessed, and used, and caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the names and unique government-issued public health care identification numbers of H.T., A.V., M.V., R.E., R.R., Q.T., E.P., S.M., E.R., T.D., and J.H., during and in relation to a felony violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Health Care Fraud, as charged in Count One of this Indictment.

COUNT SIX

[18 U.S.C. § 371, 21 U.S.C. § 331(k)]

48.   The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 8 of this Indictment as if set forth herein.

A.   OBJECT OF THE CONSPIRACY

49.   Beginning on a date unknown to the Grand Jury, and continuing to on or about October 27, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants ARMAN GRIGORYAN, LIANNA OVSEPIAN, JOHNSON, NURISTA GRIGORYAN, LIM, ARTAK OVSEPIAN, HOVANNISYAN, HARUTYUNYAN, TAMAZYAN, GHUKASYAN, YEGHIAZARYAN, KHOU, and NUNE OVSEPYAN, together with others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit Misbranding of Pharmaceutical Drugs, in violation of Title 21, United States Code, Section 331(k).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

50.   The means by which the object of the conspiracy was to be accomplished included the following:

51-58.   The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 8 of this Indictment as if fully set forth herein.

C.   OVERT ACTS

59.   In furtherance of the conspiracy and to accomplish its object, on or about following dates, defendants ARMAN GRIGORYAN, LIANNA OVSEPIAN, JOHNSON, NURISTA GRIGORYAN, LIM, ARTAK OVSEPIAN, HOVANNISYAN, HARUTYUNYAN, TAMAZYAN, GHUKASYAN, YEGHIAZARYAN,

20

1  KHOU, and NUNE OVSEPYAN, together with unnamed co-conspirators

2  and others known and unknown to the Grand Jury, committed and

3  willfully caused others to commit the following overt acts, among

4  others, within the Central District of California and elsewhere.

5      60.   The Grand Jury hereby repeats, re-alleges, and

6  incorporates by reference Overt Acts 1 through 35 of Count One as

7  if fully set forth herein.

COUNT SEVEN

[18 U.S.C. § 1956(h)]

61.   The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 9 of this Indictment as if set forth herein.

A.   OBJECTS OF THE CONSPIRACY

62.   Beginning on an unknown date, and continuing through on or about October 27, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants LIM and KHOU, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses against the United States:

a.   conducting financial transactions affecting interstate commerce knowing that property involved in the financial transactions represented the proceeds of some form of unlawful activity, and which property, in fact, involved the proceeds of specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1349, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of such specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b.   knowingly engaging and attempting to engage in monetary transactions in criminally derived property of a value greater than $10,000, that is, proceeds from health care fraud, knowing that the funds involved represented the proceeds of some form of unlawful activity, in violation of Title 18, United

1  States Code, Section 1957(a).

2  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

3       ACCOMPLISHED

4       63.   The objects of the conspiracy were to be accomplished

5  in substance as follows:

6            a.   Defendants LIM and KHOU would receive Medi-Cal

7  check payments from the State of California as a result of the

8  health care fraud conspiracy set forth in Count One above.

9            b.   Defendants LIM and KHOU would deposit, and cause to

10 be deposited, checks consisting of proceeds derived from the

11 health care fraud conspiracy set forth in Count One above into

12 the East West Account and into Chase Account 1.

13           c.   Defendants LIM and KHOU would transfer, and cause

14 to be transferred, proceeds from the East West Account to the TD

15 Ameritrade Account.

16           d.   Defendants LIM and KHOU would transfer, and cause

17 to be transferred, proceeds from Chase Account 1 to HSBC

18 Account 1.

19 C.   OVERT ACTS

20      64.   In furtherance of the conspiracy and to accomplish its

21 objects, on or about the following dates, defendants LIM and

22 KHOU, together with others known and unknown to the Grand Jury,

23 committed, and willfully caused to be committed, various overt

24 acts within the Central District of California, and elsewhere,

25 including but not limited to the following:

26      MOVEMENT OF THE CRIMINALLY DERIVED PROCEEDS FROM EAST WEST

27      ACCOUNT 1 TO THE TD AMERITRADE ACCOUNT

28           Overt Act No. 1:  On April 22, 2010, defendants LIM and

1  KHOU deposited into the East West Account a check from Medi-Cal

2  in the amount of $44,733.03, of which $41,963.89 was issued for

3  reimbursement based on claims for Manor Prescriptions.

4      Overt Act No. 2:  On June 4, 2010, defendants LIM and

5  KHOU deposited into the East West Account a check from Medi-Cal

6  in the amount of $39,914.54, of which $34,524.96 was issued for

7  reimbursement based on claims for Manor Prescriptions.

8      Overt Act No. 3:  On August 6, 2010, defendants LIM and

9  KHOU transferred $165,000 from the East West Account by writing a

10  check to defendant KHOU "for deposit only" to the TD Ameritrade

11  Account.

12      Overt Act No. 4:  On August 26, 2010, defendants LIM

13  and KHOU deposited into the East West Account a check from Medi-

14  Cal in the amount of $67,152.41, of which $63,845.95 was issued

15  for reimbursement based on claims for Manor Prescriptions.

16      Overt Act No. 5:  On September 6, 2010, defendants LIM

17  and KHOU transferred $67,000 from the East West Account by

18  writing a check to defendant LIM "for deposit only" to the TD

19  Ameritrade Account.

20      MOVEMENT OF THE CRIMINALLY DERIVED PROCEEDS FROM CHASE

21      ACCOUNT 1 TO HSBC ACCOUNT 1

22      Overt Act No. 6:  On February 25, 2010, defendants LIM

23  and KHOU deposited into Chase Account 1 a check from Medi-Cal in

24  the amount of $75,486.57, of which $74,026.66 was issued for

25  reimbursement based on claims for Manor Prescriptions.

26      Overt Act No. 7:  On March 1, 2010, defendants LIM and

27  KHOU transferred $80,000 from Chase Account 1 to HSBC Account 1.

28      Overt Act No. 8:  On March 18, 2010, defendants LIM and

1  KHOU deposited into Chase Account 1 a check from Medi-Cal in the

2  amount of $59,728.78, of which $50,575.96 was issued for

3  reimbursement based on claims for Manor Prescriptions.

4          Overt Act No. 9:  On March 22, 2010, defendants LIM and

5  KHOU transferred $60,000 from Chase Account 1 to HSBC Account 1.

6          Overt Act No. 10:  On April 8, 2010, defendants LIM and

7  KHOU deposited into Chase Account 1 a check from Medi-Cal in the

8  amount of $63,217.98, of which $61,428.49 was issued for

9  reimbursement based on claims for Manor Prescriptions.

10          Overt Act No. 11:  On April 14, 2010, defendants LIM

11  and KHOU transferred $130,000 from Chase Account 1 to HSBC

12  Account 1.

13          Overt Act No. 12:  On May 6, 2010, defendants LIM and

14  KHOU deposited into Chase Account 1 a check from Medi-Cal in the

15  amount of $76,146.78, of which $73,055.06 was issued for

16  reimbursement based on claims for Manor Prescriptions.

17          Overt Act No. 13:  On May 12, 2010, defendants LIM and

18  KHOU transferred $70,000 from Chase Account 1 to HSBC Account 1.

19          Overt Act No. 14:  On June 17, 2010, defendants LIM and

20  KHOU deposited into Chase Account 1 a check from Medi-Cal in the

21  amount of $23,174.10, of which $22,008.07 was issued for

22  reimbursement based on claims for Manor Prescriptions.

23          Overt Act No. 15:  On June 21, 2010, defendants LIM and

24  KHOU transferred $50,000 from Chase Account 1 to HSBC Account 1.

25          Overt Act No. 16:  On July 1, 2010, defendants LIM and

26  KHOU deposited into Chase Account 1 a check from Medi-Cal in the

27  amount of $105,801.90, of which $98,890.03 was issued for

28  reimbursement based on claims for Manor Prescriptions.

<u>Overt Act No. 17</u>:  On July 19, 2010, defendants LIM and KHOU transferred $100,000 from Chase Account 1 to HSBC Account 1.

<u>Overt Act No. 18</u>:  On August 19, 2010, defendants LIM and KHOU deposited into Chase Account 1 a check from Medi-Cal in the amount of $94,645.12, of which $94,396.62 was issued for reimbursement based on claims for Manor Prescriptions.

<u>Overt Act No. 19</u>:  On August 23, 2010, defendants LIM and KHOU transferred $30,000 from Chase Account 1 to HSBC Account 1.

COUNTS EIGHT through SIXTEEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2]

65. The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 9 of this Indictment as if set forth herein.

66. On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants LIM and KHOU, each aiding and abetting the other, knowing that the property involved in each of the financial transactions described below represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct, the following financial transactions affecting interstate commerce, which transactions, in fact, involved the proceeds of specified unlawful activity, namely, health care fraud, in violation of Title 18, United States Code, Section 1347, knowing that each of the transactions was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity:

| COUNT | DATE | FINANCIAL TRANSACTION |
|---|---|---|
| EIGHT | 3/1/2010 | Transfer of $80,000 from Chase Account 1 to HSBC Account 1 |
| NINE | 3/22/2010 | Transfer of $60,000 from Chase Account 1 to HSBC Account 1 |
| TEN | 4/14/2010 | Transfer of $130,000 from Chase Account 1 to HSBC Account 1 |
| ELEVEN | 5/12/2010 | Transfer of $70,000 from Chase Account 1 to HSBC Account 1 |
| TWELVE | 6/21/2010 | Transfer of $50,000 from Chase Account 1 to HSBC Account 1 |

| THIRTEEN | 7/19/2010 | Transfer of $100,000 from Chase Account 1 to HSBC Account 1 |
| FOURTEEN | 8/6/2010 | Transfer of $165,000 from the East West Account to the TD Ameritrade Account |
| FIFTEEN | 8/23/2010 | Transfer of $30,000 from Chase Account 1 to HSBC Account 1 |
| SIXTEEN | 9/6/2010 | Transfer of $67,000 from the East West Account to the TD Ameritrade Account |

COUNTS SEVENTEEN through TWENTY-THREE

[18 U.S.C. §§ 1957(a), 2]

67.  The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 9 of this Indictment as if set forth herein.

68.  On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants LIM and KHOU, each aiding and abetting the other, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct, the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely, health care fraud, in violation of Title 18, United States Code, Section 1347:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| SEVENTEEN | 4/22/2010 | Deposit of check for $44,733.03 into the East West Account |
| EIGHTEEN | 6/4/2010 | Deposit of check for $39,914.54 into the East West Account |
| NINETEEN | 8/6/2010 | Transfer of $165,000 from the East West Account to the TD Ameritrade Account |
| TWENTY | 8/26/2010 | Deposit of check for $67,152.41 into the East West Account |
| TWENTY-ONE | 9/6/2010 | Transfer of $67,000 from the East West Account to the TD Ameritrade Account |
| TWENTY-TWO | 7/1/2010 | Deposit of check for $105,801.90 into Chase Account 1 |
| TWENTY-THREE | 8/19/2010 | Deposit of check for $94,645.12 into Chase Account 1 |

COUNTS TWENTY-FOUR through THIRTY-FIVE

[31 U.S.C. §§ 5324(a)(3), (d)(2); 18 U.S.C. § 2]

69.  The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 9 of this Indictment as if set forth herein.

70.  On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants LIM and KHOU, each aiding and abetting the other, knowingly, and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, structured, assisted in structuring, and caused to be structured, the following transactions with domestic financial institutions, as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, and while violating another law of the United States:

| COUNT | DATE | TRANSACTION |
| --- | --- | --- |
| TWENTY-FOUR | 8/4/2009 | Cash deposits in the amounts of $1,662 and $9,000 into Chase Account 1. |
| TWENTY-FIVE | 8/5/2009 | Cash deposits in the amounts of $2,377 and $8,000 into Chase Account 1. |
| TWENTY-SIX | 8/6/2009 | Cash deposits in the amounts of $2,000, $2,726, and $8,000 into Chase Account 1. |
| TWENTY-SEVEN | 9/8/2009 | Cash deposits in the following amounts: $3,741 and $9,000 into Chase Account 1; $9,000 into Chase Account 2; and $7,000 into Chase Account 3. |
| TWENTY-EIGHT | 9/24/2009 | Cash deposits in the amounts of $9,000 into Chase Account 1 and $9,000 into Chase Account 2. |
| TWENTY-NINE | 9/25/2009 | Cash deposit in the amount of $9,000 into Chase Account 1. |

| THIRTY | 9/28/2009 | Cash deposits in the amounts of $5,000, $4,320, $4,000, and $1,609 into Chase Account 1, and $9,000 into Chase Account 2. |
| THIRTY-ONE | 9/29/2009 | Cash deposits in the amounts of $1,509, $4,000, $4,320, and $5,000 into Chase Account 1, and $9,000 into Chase Account 3. |
| THIRTY-TWO | 10/13/2009 | Cash deposit in the amount of $9,000 into HSBC Account 1. |
| THIRTY-THREE | 10/14/2009 | Cash deposit in the amount of $9,000 into HSBC Account 1. |
| THIRTY-FOUR | 10/15/2009 | Cash deposit in the amount of $9,000 into HSBC Account 1. |
| THIRTY-FIVE | 10/16/2009 | Cash deposit in the amount of $9,800 into HSBC Account 1. |

COUNT THIRTY-SIX

[18 U.S.C. § 1001(a)(2)]

71.  The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 8 of this Indictment as if set forth herein.

72.  On or about October 27, 2011, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, specifically, the United States Department of Health and Human Services, the United States Food and Drug Administration, and the United States Marshal's Service, defendant LIANNA OVSEPIAN knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation, in that defendant LIANNA OVSEPIAN stated that she could not recognize a photograph of defendant LIM, that she did not recognize defendant LIM's name, that she was not familiar with Huntington Pharmacy, and that she does not recruit pharmacies to conduct business with Manor, when, in truth and in fact, as defendant LIANNA OVSEPIAN then well knew, defendant LIANNA OVSEPIAN knew defendant LIM, conducted business with defendant LIM and Huntington Pharmacy through her employment with Manor, and had recruited pharmacies to conduct business with Manor.

COUNT THIRTY-SEVEN

[18 U.S.C. § 1001(a)(2)]

73. The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 8 of this Indictment as if set forth herein.

74. On or about October 27, 2011, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, specifically, the United States Department of Health and Human Services, the United States Food and Drug Administration, and the United States Marshal's Service, defendant NURISTA GRIGORYAN knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation, knowing the same to be a materially false, fictitious, and fraudulent statement, in that defendant NURISTA GRIGORYAN stated that defendant JOHNSON worked at Manor four times per week, when, in truth and in fact, as defendant NURISTA GRIGORYAN then well knew, defendant JOHNSON did not work at Manor four times per week.

COUNT THIRTY-EIGHT

[18 U.S.C. § 1001(a)(2)]

75.   The Grand Jury hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 8 of this Indictment as if set forth herein.

76.   On or about October 27, 2011, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, specifically, the United States Department of Health and Human Services, the United States Food and Drug Administration, and the United States Marshal's Service, defendant ARTAK OVSEPIAN knowingly and willfully made a materially false, fictitious, and fraudulent statement, in that defendant ARTAK OVSEPIAN stated that he had driven patients from Manor to pharmacies on only one or two occasions when, in truth and in fact, as defendant ARTAK OVSEPIAN then well knew, defendant ARTAK OVSEPIAN had driven patients from Manor to pharmacies on multiple occasions, including at least eight occasions between September 2010 and September 2011, and defendant ARTAK OVSEPIAN had assisted in the transportation of patients from Manor to pharmacies on at least two other occasions.

## FORFEITURE ALLEGATION 1

[28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C);

and 18 U.S.C. §§ 1347 and 1349]

1.   Pursuant to Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); and Title 18, United States Code, Sections 1347 and 1349, each defendant convicted of an offense charged in Counts One through Four and Six of this Indictment shall forfeit to the United States the following property:

a.   All right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to each such offense, including but not limited to the real property located in Pasadena owned by PHIC K. LIM AND THEANA S. KHOU, TRUSTEES, OR THEIR SUCCESSORS UNDER THE PHIC. K. LIM AND THEANA S. KHOU TRUST[1];

b.   A sum of money equal to the total amount of proceeds derived from each such offense for which said defendant is convicted.  If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), each defendant so convicted shall forfeit substitute property, up to the total value of the property described in paragraph 2, if, by any act or omission of the defendant, the property described in paragraph 1, or any portion thereof, (a)

_____

[1]  The referenced property is a residence and the street address has been redacted pursuant to Local Rule 79-5.4(e).

cannot be located upon the exercise of due diligence; (b) has
been transferred or sold to, or deposited with, a third party;
(c) has been placed beyond the jurisdiction of the court; (d) has
been substantially diminished in value; or (e) has been
commingled with other property that cannot be divided without
difficulty.

FORFEITURE ALLEGATION 2

[18 U.S.C. § 982(a)(1)]

1.   Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant convicted of an offense charged in Counts Seven through Twenty-Three of this Indictment shall forfeit to the United States the following property:

     a.   Any and all property, real or personal, involved in such offense, and all property traceable to such offense, including but not limited to the real property located in Pasadena owned by PHIC K. LIM AND THEANA S. KHOU, TRUSTEES, OR THEIR SUCCESSORS UNDER THE PHIC. K. LIM AND THEANA S. KHOU TRUST.

     b.   A sum of money equal to the total amount of money involved in the offense for which the defendant is convicted.  If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each defendant so convicted shall forfeit substitute property, up to the value of the amount described in paragraph 1, if, by any act or omission of said defendant, the property described in paragraph 1, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of this court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION 3

[31 U.S.C. § 5317(c)(1)]

1. Pursuant to Title 31, United States Code, Section 3517(c)(1), each defendant convicted of an offense charged in Counts Twenty-Four through Thirty-Five of this Indictment shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in the offense and any property traceable thereto. If the above-described property is unavailable, defendants shall forfeit a sum of money equal to the total amount of money involved in the offenses for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 31, United States Code, Section 5317(c)(1)(B), each defendant so convicted shall forfeit substitute property, up to the value of the amount described in paragraph 1, if, by any act or omission of said defendant, the property described in paragraph 1, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been

///
///
///
///
///
///
///

placed beyond the jurisdiction of this court; has been
substantially diminished in value; or has been commingled with
other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson


ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RODRIGO A. CASTRO-SILVA
Assistant United States Attorney
Chief, OCDETF Section

JENNIFER L. WILLIAMS
Assistant United States Attorney
OCDETF Section

BENJAMIN R. BARRON
Assistant United States Attorney
OCDETF Section